# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RIO RANCHO PUBLIC SCHOOLS
BOARD OF EDUCATION ,

      Petitioner,

      v.                                                              1:18-cv-0906 WJ/LF

NEW MEXICO PUBLIC EDUCATION DEPARTMENT,

      Respondent.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART PETITIONER'S EMERGENCY MOTION FOR STAY

THIS MATTER comes before the Court upon Petitioner's Emergency Motion for Stay Pending Appeal, filed September 27, 2018 (**Doc. 3**). A hearing was held on the emergency motion on September 28, 2018. For the reasons stated on the record at the hearing and herein, the Court finds that Petitioner's Motion is well-taken and, therefore, is **GRANTED IN PART**.

## BACKGROUND

Petitioner, Rio Rancho Public Schools Board of Education, appeals the New Mexico Public Education Department's decision mandating that Petitioner divert 15% of its federal special education money into early intervening services. Respondent concluded that the percentage of African Americans in special education services was "Significantly Disproportionate" to the students from the percentage of students from other races, apparently pursuant to 20 U.S.C. § 1418(d) and 34 CFR § 300.646.

Petitioner received Respondent's final decision on September 18, 2018, providing that its "determination of Significant Disproportionality… was issued in accordance with federal law."

**Ex. 2.** Petitioner filed an appeal of that ruling, and emergency motion for stay, on September 20, 2018, in the First Judicial District Court, County of Santa Fe, New Mexico.

This matter was removed on September 26, 2018, and the emergency motion was refiled on September 27, 2018. In the emergency motion, Petitioner seeks a stay or injunction of the Respondent's decision requiring them to transfer 15% of the special education budget to early intervention programs, effectively maintaining the status quo.

The Emergency Motion was apparently set for hearing in state court on October 1, 2018. That hearing was canceled after the case was removed. Petitioner subsequently refiled this Emergency Motion yesterday. Based on Petitioner's representation that the fund transfer had to occur by September 28, 2018 and could not be reversed, the Court held a hearing on the emergency motion on short notice on September 28, 2018. Respondent therefore did not have time to file a response.

After hearing from both sides, and based on the record before the Court, the Court ruled that Petitioner had satisfied the preliminary injunction standards pursuant to Fed. R. Civ. P. 65. The Court concluded that an injunction should be entered for a limited duration in order to maintain the status quo, at least until subject matter jurisdiction was decided or the Emergency Motion was fully briefed and heard at an evidentiary hearing.

## DISCUSSION

Initially, the Court notes that Petitioner sought a stay, either as a stay of appeal under Fed. R. Civ. P. 62(d), or as a stay under New Mexico Rules 1.074(Q). The Court concludes that the appropriate procedural method is a preliminary injunction under Fed. R. Civ. P. 65. *See* Fed. R. Civ. P. 81(c) (federal rules of civil procedure apply in removed action). In any event, the

federal preliminary injunction standard appears to be substantially similar to the New Mexico stay standard under NMRA 1.074(Q).

To obtain a preliminary injunction under Fed. R. Civ. P. 65, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Attorney Gen. of Okla. V. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (quotation omitted).

The main purpose of a preliminary injunction is simply to preserve the status quo pending the outcome of the case. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975). In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits. *Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978).

Based on the record before the Court at this time, the Court concludes that Petitioner has satisfied the preliminary injunction standards.

## A. **Success on Merits**.

For the reasons stated on the record, Petitioner has shown a likelihood of success on the merits.

As to the underlying merits, Petitioner seeks a review of the Respondent's determination that 15% of federal funds earmarked for special education must be transferred to early intervention programs, because of "Significant Disproportionality" in the make-up of students classified as disabled. *See* 20 U.S.C. § 1418(d) and 34 CFR § 300.646.

It appears that a state district court may review such determination under NMSA § 22-2-14(I). "When acting as an appellate court, the district court may reverse an agency decision if it

determines that the agency acted fraudulently, arbitrarily or capriciously, if the decision was not supported by substantial evidence, or if the agency did not act in accordance with the law." *New Mexico State Bd. of Psychologist Examiners v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 364, 62 P.3d 1244, 1246, *citing* NMSA 1978, § 39-3-1.1(D) (1999); Rule 1-074(Q) NMRA 2002; *Zamora v. Vill. of Ruidoso Downs,* 120 N.M. 778, 782-85, 907 P.2d 182, 186-89 (1995) (describing district court's scope of review when reviewing final agency decision).

Petitioner persuasively argued that Respondent's decision was either not supported by substantial evidence, or the Respondent did not act in accordance with the law. Petitioner presented argument and evidence that they may not be above the cut-off required for Respondent to order the transfer of funds. Moreover, Petitioner argued that the rules and regulations currently enacted may not require that transfer.

**B.** **<u>Irreparable Harm</u>.**

"[T]he moving party must show irreparable injury in order to obtain a preliminary injunction." *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir. 1986) (quoting *Sampson v. Murray,* 415 U.S. 6 (1974)); *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975). "[P]laintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation omitted). Harm must not be speculative, rather Petitioner bears the burden of showing a significant risk of harm. *Id.* "Injury is generally not irreparable if compensatory relief would be adequate." *Tri-State Generation*, 805 F.2d at 355 (quoting *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472–73 (5th Cir. 1985)).

Here, if the status quo is not maintained, Petitioner will suffer irreparable harm and effectively lose its ability to seek redress in this case. If an injunction is not entered, Petitioner will be forced to transfer federal funds from the special education pot, to the early intervention pot. This could mean the layoff of up to ten special education teachers, and the risk that special education students may not continue to receive appropriate services, potentially exposing Petitioner to a claim that they are not providing free and appropriate education.

Alternatively, even if local funds are found to cover the 15% that was transferred out of the special education pot, Petitioner will have to maintain that local funding in special education henceforth. Petitioner described this as the "maintenance of effort" problem, which apparently requires local school districts to maintain the amount of local funds raised henceforth. In other words, it appears that once those federal funds are transferred, there is no going back.

C. **Balance of Equities.**

The Court finds that the balance of the equities tips in Petitioner's favor and maintaining the status quo. It does not appear that any students or Respondent will be harmed if the status quo is maintained. However, if the status quo is not maintained, students who receive special education may not receive the same standard of education. Respondent argued that their own federal funds could be in jeopardy if a federal agency decides that they are not adequately maintaining federal standards or insuring that federal regulations are followed. The Court notes that the Respondent has taken actions to remain compliant with federal regulations, and the Court doubts that they would be found out of compliance based on this injunction.

D. **Public Interest**.

Maintaining the status quo and entering a preliminary injunction would not be adverse to the public interest. *See Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281

(10th Cir. 2016). In fact, the Court finds that the public interest would be served by insuring that special education students receive the standard of education they are currently receiving.

  **E.** **No Bond need be posted.**

"The court may issue a preliminary injunction ... only if the movant gives security *in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c) (emphasis added).

The Court has "wide discretion… in determining whether to require security." *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (affirming district court ruling, where there appeared to be no harm). A bond may be "unnecessary to secure a preliminary injunction if there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987). *See also Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) (noting that the purpose of the bond requirement to "to protect his adversary from loss in the event that future proceedings prove the injunction issued wrongfully") (quotations omitted). The Court finds that the appropriate amount of bond in this case is $0, in part because the Court finds Respondent will not suffer harm. It appears to be undisputed that these funds can later be shifted from the special education pot to early intervention if need be.

## CONCLUSION

Based on the record before the Court, the Court concludes that Plaintiff made a sufficient showing on all preliminary injunction factors. The injunction entered today is necessary to maintain the status quo. Failure to enter the injunction would result in irreparable harm, apparently mooting this administrative appeal. If Petitioner is to have any meaningful relief in this case, an injunction must be entered and the status quo maintained. The injunction pursuant

to this MOO is temporary and will last until the preliminary injunction matter is fully briefed and heard at an evidentiary hearing, or until further order of the Court.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Stay (**Doc. 3**) is **GRANTED IN PART,** without prejudice to rehearing the motion at a full evidentiary hearing after it is fully briefed.

**IT IS FURTHER ORDERED** that Respondent's decision requiring Petitioner to divert funds from special education is **STAYED** for a limited duration, until further order of the Court following an evidentiary hearing on the Emergency Motion (**Doc. 3**). An evidentiary hearing will be held in a reasonable time after the Emergency Motion is fully briefed.

_____
CHIEF UNITED STATES DISTRICT JUDGE

[signature]